IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


JAMES SUTTON,                          *
                                       *
              Plaintiff,               *
                                       *
vs.                                    *        No. 4:05CV01672 SWW
                                       *
JO ANNE B. BARNHART,                   *
Commissioner, Social Security          *
Administration,                        *
                                       *
              Defendant.               *


**Memorandum Opinion and Order**


Plaintiff James Sutton seeks judicial review of the final decision of the Commissioner of

the Social Security Administration to deny his claim for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI").  The Court finds, for the reasons stated below, that

the decision should be affirmed.

**Background**

James Sutton was born on February 17, 1972.  He has an eleventh-grade education and

last worked for the City of Cabot, Arkansas, in the Street Department.  He stopped working in

August of 2002 because of back pain. (Tr. 242-43)  According to the record, Sutton  sought

treatment for his back pain in May 2000, and eventually was referred to Dr. Steven Cathey.  (Tr.

94-100)   In July 2000, Cathey performed a laminectomy and diskectomy at the L4-L5 and L5-

S1 levels.  (Tr. 101-02)   In August 2002, Dr. John Brown, Sutton's family doctor, ordered an

MRI because Sutton continued to complain of  back pain.  (Tr. 103, 110-112)  In October 2002,

Dr. Brian Nichol performed a epidrography, percutaneous lysis of epidural adhesions via racz technique, caudal epidural steroid injection via racz technique, and post lysis edipurography. (Tr.140-41,163)  Plaintiff Sutton continued to complain of chronic low back pain.  Dr. Cathey prescribed pain medication in February 2003 (Tr. 142).  Sutton has been using a TENS unit since August 2002. (Tr. 114)

Sutton filed for DIB and SSI on September 16, 2002, alleging he became disabled on March 30, 2002.  (Tr. 43-46)   His applications were denied initially and upon reconsideration, and Sutton requested a hearing before an administrative law judge ("ALJ"). (Tr. 33-41)  The ALJ conducted a hearing on December 10, 2003.  (Tr. 237-57)  Sutton testified he became disabled in August 2002, due to back pain. Following the hearing, Sutton submitted a letter and results of a consultative orthopedic examination conducted by Dr. Harold Chakales on February 2, 2004.  (Tr. 189-192)  The ALJ rendered his decision on July 8, 2004.  He found that Sutton was under a disability from August 1, 2002 to February 2, 2004, but he was not under a disability at any time beginning February 2, 2004, through the date of the decision.  (Tr. 19-25)  The Appeals Council denied Sutton's request for review of the ALJ's decision (Tr. 5-7)

Plaintiff Sutton challenges the part of the decision finding he was not disabled after February 2004.  He contends the ALJ's decision was not supported by substantial evidence.

## Discussion

This Court's review function is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Tellez v. Barnhart,* 403 F.3d 953, 956 (8th Cir. 2005).

> 'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'  In reviewing the

> Commissioner's decision, we do not substitute our own view of the evidence for that of the Commissioner. Whether the record supports a contrary result or whether we might decide the facts differently is immaterial. We must affirm the Commissioner's decision if the findings are supported by substantial evidence.

*Id.*

Sutton contends there is no substantial evidence to support the ALJ's finding that his condition improved and, beginning February 2, 2004, his residual functional capacity changed. He argues the ALJ did not address the medical improvement standard, failed to seriously consider the report of Dr. Harold Chakales, and failed to make proper credibility findings.

While both Sutton and the Commissioner invoke the eight-step sequential evaluation process used in termination of benefits reviews, this is a "closed period" case, *i.e.* one in which "the decision-maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision. Typically, both the disability decision and the cessation decision are rendered in the same document." *Pickett v. Bowen,* 833 F.2d 288, 289 n.1 (11th Cir. 1987). In *Camp v. Heckler,* 780 F.2d 721, 721-22 (8th Cir.1986) (per curiam), the Eighth Circuit rejected the application of the medical-improvement standard in cases such as this one, where the ALJ determined in one proceeding the fact, extent, and duration of a claimant's disability. *See Ness v. Sullivan,* 904 F.2d 432, 434 n. 4 (8th Cir.1990).

The ALJ considered Sutton's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b)(2003). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. Id.

Step 2 involves a determination, based solely on the medical evidence, of whether the

claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment.  Id., § 404.1520(c).  If not, benefits are denied.  Id.

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. Id., § 404.1520(d).  If so, and the duration requirement is met, benefits are awarded.  Id.

If claimant does not meet or equal a Listing, then a residual functional capacity assessment is made based on all the relevant medical and other evidence.  Id., § 404.1520(e). This residual functional capacity assessment is utilized at Steps 4 and 5.  Id.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work.  Id., § 404.1520(f).  If so, benefits are denied.  Id.

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience.  Id., § 404.1520(g).  If so, benefits are denied; if not, benefits are awarded.  Id.

The Commissioner and this Court must apply the five-step analysis in evaluating alleged disabilities.  The Commissioner, adopting the findings of the ALJ, held that Sutton met all five of these requirements until February 2, 2004.  After that date, however, the Commissioner, through the ALJ, concluded that although Sutton was unable to perform his past relevant work, he retained the residual functional capacity ("RFC") to perform jobs existing in significant numbers in the national economy and, therefore, was not under a disability as defined by the Social Security Act.

'The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence.' An ALJ's determination of a claimant's RFC must find support in the medical evidence.

Subjective complaints of pain are often central to a determination of a claimant's RFC. The ALJ may not disregard such complaints 'solely because the objective medical evidence does not fully support them.' In evaluating subjective complaints of pain, the ALJ should examine: (1) the plaintiff's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.' The ALJ may discount subjective complaints 'if there are inconsistencies in the evidence as a whole.' If the ALJ gives a good reason for discrediting the claimant's credibility, the court 'will defer to [his] judgment even if every factor is not discussed in depth.'

*Fredrickson v. Barnhart,* 359 F.3d 972, 976 (8th Cir. 2004).

Sutton testified he has pain in his right hip and knee, and back, "all the time." Tr. 245. He says using a heating pad and the TENS unit helps, and that he takes over-the-counter pain medication. (Tr. 245) Sutton testified that he had not seen a doctor during 2003 because he cannot afford a doctor's visit. (Tr. 252) He testified that after standing around all day, he could hardly walk the next day, and that he cannot mow his yard. He said he can carry a bag of groceries, but cannot push, pull, or stand for very long. (Tr. 246) He testified he uses a cane if he has to walk very far, and that his pain medication changes his pain from a sharp, shooting pain to a dull, tolerable pain. He also said his pain limits his ability to concentrate and affects his ability to sleep. (Tr. 247) Sutton's wife testified[1] that he seems to be in a lot of pain, cannot do chores, and spends most of his time on the couch. (Tr. 253)

The ALJ concluded that while Sutton may experience some of the subjective symptoms he alleges, he does not experience them to the degree alleged. He found Sutton's testimony an

---

[1]The ALJ said Sutton's wife was present at the hearing but did not testify. (Tr. 19)

overstatement of his subjective symptoms and functional limitations and only generally credible.

Tr. 22  The ALJ found Sutton failed to document his record with supporting evidence, and noted

the absence of any objective medical evidence to substantiate Sutton's allegations that he was

unable to do any work beginning February 2, 2004.  T. 22  In addition to the lack of objective

medical evidence, the ALJ noted Sutton's testimony that he uses a cane if he has to walk very

far, and that his medications help turn his pain from a sharp shooting pain to a dull shooting pain.

T. 21

      The Court finds the ALJ made a full and proper credibility analysis.  *See Tucker v.*

*Barnhart,* 363 F.3d 781, 783 (8th Cir. 2004)(ALJ not required to discuss each Polaski factor as

long as analytical framework is recognized and considered).   Further, the ALJ specifically

discussed Dr. Chakales' orthopedic examination on February 2, 2004, including the range of

motion and work tolerance forms.  Dr. Chakales reported that his examination of Sutton's neck

showed normal range of motion, his upper extremities were also normal, and the range of motion

in his hips, knees, and ankles were normal.  Sutton did have some restricted range of motion in

his lumbar spine with flexion and extension, but Dr. Chakales opined that Sutton can perform

almost a full range of light work.  (Tr. 189-192) The ALJ stated he gave great weight to Dr.

Chakales ' opinion of what Sutton is capable of performing.  (Tr. 22)

      Sutton points out that he visited the emergency room on July 7, 2004, the day before the

ALJ's decision was issued, complaining that he had started having back pain two weeks earlier,

that it had increased in severity, and that he could not go back to his doctor because he had no

insurance.  (Tr. 200)  He was given Demerol and Phenegran after admission, and discharged on

Ibuprofen, Flexeril, and Lortab for pain with instructions to follow up with either Dr. Cathey or

his family doctor if he needed any further pain control.  (Tr. 201)   Sutton also refers to Dr.

Chakales' post-hearing letter that accompanied his report in which Chakales described Sutton as

a poor candidate for rehabilitation.  (Tr. 189)

Based upon the relevant evidence, the ALJ determined that Sutton was unable to perform

his past relevant work after February 2, 2004, but did retain the RFC to perform light work with

specific limitations.  (Tr. 22-23)  David Elmore, a vocational expert, testified at the hearing on

December 10, 2003.  The ALJ posed the following hypothetical:

> Assume you're dealing with an individual the same age as the Claimant with the
> same educational background and past work experience.  Further, assume that the
> individual is limited to light work with no repetitive bending, stooping, pushing or
> pulling.  Now with that level of limitation the return to past work would be
> precluded on exertional considerations alone.  Could this individual perform other
> jobs in the local, regional or national economy?

(Tr. 255)  Mr. Elmore responded that there would be a variety of jobs at the light level.  (Tr.

256)  The ALJ asked a second hypothetical:

> [Assume] the same age, education and past work experience as before but this time
> assume that the individual has a chronic back condition with associated pain
> resulting in an inability to engage in sustained work activity for a full eight-hour
> day on a regular and consistent basis.  Would this allow for a return to past work?

Mr. Elmore responded: "No, sir." (Tr. 256)  Sutton argues that the first hypothetical did not

encompass all of his limitations, and the second did.

The ALJ determined Sutton could perform light work with the following limitations: no

repetitive bending, stooping, pushing or pulling.  (Tr. 24)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds.  Even though the weight lifted
> may be very little, a job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls.  To be considered capable of performing a full or
> wide range of light work, you must have the ability to do substantially all of these

7

activities.  If someone can do light work, we determine that he or she can also do
sedentary work, unless there are additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  Dr. Chakales found Sutton could lift or carry up to 20 pounds

occasionally, sit for 3 hours, and stand and/or walk for 6 hours.  He found Sutton could

push/pull/operate hand and feet controls occasionally, could occasionally climb, balance, stoop,

crouch, knee, and crawl, and should avoid concentrated exposure to heights, moving machinery,

humidity, temperature extremes, and vibrations.  (Tr. 192) While the hypothetical question the

ALJ asked during the hearing did not include the environmental and some postural restrictions

which Dr. Chakales included, a fair reading of the question leads to a conclusion that it set forth

with reasonable precision Sutton's impairments.  *See Starr v. Sullivan,* 981 F.2d 1006, 1008 (8th

Cir. 1992).

It is not the task of this Court to review the evidence and make an independent decision.

Neither is it to reverse the decision of the ALJ because there is evidence in the record which

contradicts his findings.  The test is whether there is substantial evidence in the record as a

whole which supports the decision of the ALJ.  *E.g., Pratt v. Sullivan,* 956 F.2d 830, 833 (8th

Cir. 1992).  The Court finds the ALJ's opinion sets out the correct standards and cites substantial

evidence in the record to support his conclusions.

## Conclusion

IT IS THEREFORE ORDERED that the final determination of the Commissioner be

affirmed and plaintiff's complaint is dismissed with prejudice.

DATED this 1st day of December 2006.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

8